IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UCHE PHILIP MORDI**, Federal Inmate #08179-025, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CASE NO. 11-cv-193-MJR ) ) |
| **TODD ZIEGLER**, *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Uche Philip Mordi, is a federal inmate in the Allenwood Federal Correctional Institution in Pennsylvania. Pursuant to 42 U.S.C. § 1983, Mordi brings this action against several county and state officials for deprivations of his rights under the United States Constitution and the Vienna Convention. Plaintiff is serving a 120 month federal sentence for possession with intent to distribute crack cocaine. This case is now before the Court for a preliminary review of the complaint, in accordance with 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

Page **1** of **13**

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**The Complaint**

Plaintiff is a Nigerian national who was an undergraduate student at Southern Illinois University at Carbondale at the time of his March 12, 2009, arrest (Doc. 1, pp. 6, 9, 17). He was the subject of a traffic stop on Interstate 57 in Effingham County, conducted by Defendants Ziegler and Zerrusen, both Illinois State Police Officers (Doc. 1, p. 14-15). Plaintiff claims that the stop was made because he was unlawfully "profiled" based on his race, age and style of dress.

Plaintiff was issued a warning citation, apparently for a license plate violation. Defendants Ziegler and Zerrusen, along with Defendant Rich, an Effingham County Sheriff's Officer, then

unreasonably prolonged the traffic stop after Plaintiff declined to consent to a search, in order to conduct a canine sniff search of Plaintiff's vehicle. The dog alerted, and drugs and cash were found in Plaintiff's duffle bag. Plaintiff and his passenger (named Otesile) were both arrested.

After Plaintiff was taken to the Illinois State Police ("ISP") station in Effingham, Defendants Chance and Healey interrogated him for over eight hours without giving him anything to eat (Doc. 1, p. 15-16). They also refused to remove his handcuffs for this entire time. They were assisted by Defendant Kamminga, also an ISP Officer. Plaintiff became extremely tired and hungry, and states he "supposedly admitted" to purchasing the drugs and intending to deliver them (Doc. 1, p. 16). He was then transported to the Effingham County Jail, where he was placed in a cell and was not fed until the following morning. The next day, state charges were filed against him, however, some weeks later he was charged with the federal drug offense. Thereafter, Defendant Fowler, an Assistant State's Attorney, withdrew the state charges. Plaintiff alleges that Defendant Fowler, along with Defendant Deters (the Effingham County State's Attorney), Defendant Chance, and Defendant Effingham County, "traded" Plaintiff to the federal prosecutor in exchange for a better chance to obtain a conviction in federal court, and for the eventual proceeds of the forfeiture of Plaintiff's property.

During all of Plaintiff's interactions with these Defendants, he was never informed of his right under the Vienna Convention to contact a representative of his home country's embassy, despite the Defendants' knowledge that Plaintiff was a Nigerian citizen. Had he been properly informed according to this treaty, he would have availed himself of assistance from a Nigerian representative, and his case may have had a different outcome. As it was, Plaintiff eventually pled guilty to the federal drug charges, which led to the forfeiture of his vehicle and a substantial

amount of cash, on top of the substantial prison sentence. Plaintiff alleges he was under pressure to plead guilty to avoid further harassment of his former girlfriend, who was interrogated by Defendant Chance and lost her job as a result, and to spare Otesile (his passenger) from ongoing harassment by local Carbondale police.

Plaintiff claims that the search of his vehicle, his arrest, and subsequent prosecution were all unconstitutional. Moreover, he asserts that the conditions of his interrogation and detention constituted cruel and unusual punishment. Based on the violation of his rights under the Vienna Convention and the constitution, he seeks compensatory, special and punitive damages, including compensation for the forfeiture of his property and his expulsion from his Bachelor's Degree program. He also seeks a temporary restraining order requiring the Defendants to comply with the Vienna Convention notification requirements in the future.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into three (3) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Challenges to Underlying Conviction**

At the outset, it must be stated that many of Plaintiff's allegations of unconstitutional conduct by the arresting and investigating officers, which led to his conviction, cannot be addressed in the context of a § 1983 action. Indeed, Plaintiff's complaint never requests the Court to invalidate his conviction. However, Plaintiff claims that the original traffic stop was a result of improper "profiling," the stop was illegally prolonged in order to conduct a canine sniff search, he

Page **4** of **13**

was pressured to waive his *Miranda* rights, his interrogation was unduly coercive, and the county prosecutors acted improperly in turning him over to the federal prosecutor. Such matters are not the proper subject of a civil rights suit under § 1983. *See Graham v. Broglin,* 922 F.2d 379, 381 (7th Cir.1991) (release from custody cannot be sought in a § 1983 action). Challenges to the constitutionality of a conviction must be raised, if at all, on direct appeal from the conviction or in a proper post-conviction or habeas action, if Plaintiff's right to raise such matters was not waived by his guilty plea, and if any of these actions could be timely filed. Accordingly, these allegations will not be further addressed in this proceeding, and this count shall be dismissed with prejudice.

**Count 2 - Vienna Convention**

Plaintiff's allegation that he was not informed of his right to contact the Nigerian Consulate after his arrest and detention, however, does state a cognizable § 1983 claim.

Article 36 of the Vienna Convention provides, in relevant part:

> [I]f he [the alien] so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.

Vienna Convention on Consular Relations, Art. 36(1)(b), Apr. 24, 1963, 21 U.S.T. 77, 101, T.I.A.S. No. 6820; *see also Jogi v. Voges,* 480 F.3d 822, 835 (7th Cir. 2007) ("*Jogi II*"). To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Federal laws include treaties such as the Vienna Convention. U.S. CONST., art. VI, cl. 2; *see also Jogi II,* 480 F.3d at

825-27. Under the law of this circuit, 42 U.S.C. § 1983 provides a private right of action for individuals to pursue claims for violations of Article 36 of the Vienna Convention. *Jogi II,* 480 F.3d at 835-36. Furthermore, the Seventh Circuit has determined that such a claim, seeking damages rather than immediate or more speedy release from custody, is not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Jogi II*, 480 F.3d at 836 (citing *Wallace v. Kato*, 549 U.S. 384 (2007) and *Wilkinson v. Dotson,* 544 U.S. 74 (2005)).

Plaintiff claims that following his arrest, he was never informed by any of the Defendants that he had the right to communicate with and request assistance from the Nigerian Consulate. He thus states a claim under § 1983 that shall receive further consideration, against the officers who arrested, searched, and interrogated him: Defendants Ziegler, Zerrusen, Rich, Chance, Healey and Kamminga.

In addition to the Defendants named above, Plaintiff identifies a number of other individual Defendants who failed to notify Plaintiff of his rights under the Vienna Convention. These include Defendant ISP Officers Ristvedt and Pansing, who directed or dispatched the other ISP Defendants who interrogated Plaintiff; Defendant Monnet (the Effingham County Sheriff) and Defendant Devore (the Marion County Sheriff), both of whom oversaw Plaintiff's detention in their respective counties; and Defendants Deters and Fowler, the Efngham County State's Attorney and assistant who initiated and later terminated the state prosecution against Plaintiff. The gist of the complaint is that each of these officials, who were involved in Plaintiff's detention and criminal prosecution, failed to follow the Vienna Convention requirement to notify Plaintiff of his right to seek assistance from the Nigerian consulate. At the pleadings stage, Plaintiff has likewise stated a claim against Defendants Ristvedt, Pansing, Monnet, Devore, Deters, and

Fowler, that should receive further review.

In addition, Plaintiff names several municipalities, Defendants Effingham County Sheriff's Department, Marion County Sheriff's Department, and the Counties of Effingham and Marion; as well as the State of Illinois, the Illinois State Police, and District 12 of the Illinois State Police. In order to obtain relief against a municipality, a plaintiff must allege that the deprivations of his rights were the result of an official policy, custom, or practice of the municipality. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978); *see also Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 765 (7th Cir. 2006). *Monell* applies to any local government unit that is not considered part of the State for Eleventh Amendment purposes. *Monell*, 436 U.S. at 690 ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies."). Liberally construed, Plaintiff's allegations that the Effingham and Marion County Sheriffs failed to follow the notification requirements of the Vienna Convention are based upon the conditions, policies, and customs of each Sheriff's Department and of Marion and Effingham Counties. Accordingly, Plaintiff may proceed against Defendants Effingham County Sheriff's Department, Marion County Sheriff's Department, and the Counties of Effingham and Marion.

As to the State of Illinois and its agencies, however, the Eleventh Amendment bars suits in federal court against these entities, and they are not considered "persons" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *see also Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes*

*v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 218, 220 n.3 (7th Cir. 1990) (same). Plaintiff is thus barred from seeking money damages from Defendants State of Illinois, the Illinois State Police, and ISP District 12.

Plaintiff has also requested prospective injunctive relief. Under the doctrine of *Ex parte Young*, a plaintiff may file "suit[ ] against state *officials* seeking prospective equitable relief for ongoing violations of federal law . . . ." *Marie O. v. Edgar,* 131 F.3d 610, 615 (7th Cir. 1997) (emphasis added); *see Ex parte Young,* 209 U.S. 123, 159-60 (1908); *Ind. Prot. and Advocacy Servs. v. Ind. Family and Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010). Plaintiff's complaint, however, fails to name any individual state officials against whom such injunctive relief may be considered. Defendants State of Illinois, Illinois State Police, and District 12 of the Illinois State Police shall be dismissed from this suit with prejudice.

**Count 3 - Cruel and Unusual Punishment**

Finally, Plaintiff alleges that during his detention and interrogation, he was deprived of food from the time of the traffic stop (around 1:10 p.m. on March 12, 2009) until the following morning, when he was fed breakfast (Doc. 1, pp. 13, 16). His interrogators also refused to remove his handcuffs during the approximate eight hours of his questioning. As noted above in Count 1, whether these allegedly coercive conditions were extreme enough to invalidate Plaintiff's alleged confession or call into question the validity of his conviction are not matters properly before this Court. Plaintiff's allegations shall be analyzed only to determine whether they state a claim for unconstitutionally cruel and unusual punishment.

Claims brought pursuant to § 1983, when involving detainees, arise under the Fourteenth Amendment and not the Eighth Amendment. *See Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir.

2000).   However, the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'"   *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)). Generally, confinement of pre-trial detainees may not be punitive, because "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt."   *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

In a case involving conditions of confinement, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause.   First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety.   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   The second requirement is a subjective element – establishing a defendant's culpable state of mind.   *Id.*   Thus, for 'cruel and unusual punishment' claims brought by a detainee, the plaintiff must show that the jail officials knew that the plaintiff was at risk of serious harm, and that they disregarded that risk by failing to take steps to avoid the harm. *Grieveson v. Anderson*, 538 F.3d 763, 771-72, 777-79 (7th Cir. 2008).

In some circumstances, a prisoner's claim that he was denied food may satisfy the objective element but, as the Seventh Circuit has held, the denial of food is not a *per se* violation of the Eighth Amendment.   Rather, a district court "must assess the amount and duration of the deprivation."   *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999).   *See generally Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (it would be an Eighth Amendment violation to deny a prisoner an "identifiable human need such as food"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir.

2001) (withholding food from an inmate can, in some circumstances, satisfy the first *Farmer* prong); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (noting that denial of one out of every nine meals is not a constitutional violation; *Cooper v. Sheriff of Lubbock Cnty.*, 929 F.2d 1078 (5th Cir. 1991) (failure to feed a prisoner for twelve days is unconstitutional); *Cunningham v. Jones*, 567 F.2d 653, 669 (6th Cir. 1977), *app. after remand*, 667 F.2d 565 (1982) (feeding inmates only once a day for 15 days, would constitute cruel and unusual punishment only if it "deprive[s] the prisoners concerned . . . of sufficient food to maintain normal health."). In Plaintiff's case, he missed no more than two meals, dinner and possibly lunch on the day of his traffic stop. This short term deprivation of food does not rise to the level of a constitutional violation.

As to the handcuffs, Plaintiff takes issue with the length of time he was required to remain in these restraints and the tightness of the cuffs. He does not specifically allege that he suffered any injury, nor that his interrogators intended to physically harm him at any time. In an excessive force claim, the Court must consider whether the force "was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1180 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001). Further, the "cruel and unusual punishments" clause proscribes only the deliberate, "unnecessary and wanton infliction of pain," *Whitley v. Albers*, 475 U.S. 312, 320 (1986); actions taken in the interest of institutional security are not violative of the clause, even if objectively unreasonable. *Id.* at

320-21. Plaintiff describes circumstances that were uncomfortable. No injury resulted and minimal force was used, without any indication of improper intent. For these reasons, Plaintiff's treatment does not violate the constitution.

Although the conditions described by Plaintiff were unpleasant and perhaps unreasonable, it is clear that he was subjected to these conditions for only a short time – fewer than twenty-four hours without food, and approximately eight hours in handcuffs. "The conditions of imprisonment, whether of pretrial detainees or of convicted criminals, do not reach even the threshold of constitutional concern until a showing is made of 'genuine privations and hardship over an extended period of time.'" *Duran v. Elrod*, 760 F.2d 756, 759 (7th Cir. 1985) (quoting *Bell v. Wolfish*, 441 U.S. 520, 542 (1979)). Accordingly, Plaintiff's claim for cruel and unusual punishment shall be dismissed with prejudice.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNTS ONE** and **THREE** fail to state a claim upon which relief may be granted, and thus are **DISMISSED** with prejudice. Defendants **STATE OF ILLINOIS, ILLINOIS STATE POLICE,** and **DISTRICT 12 OF THE ILLINOIS STATE POLICE** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **CHANCE, DETERS, DEVORE, FOWLER, HEALY, KAMMINGA, MONNET, PANSING, RICH, RISTVEDT, ZERRUSEN, ZIEGLER, EFFINGHAM COUNTY SHERIFF'S DEPARMENT, COUNTY OF EFFINGHAM, MARION COUNTY SHERIFF'S DEPARTMENT,** and **COUNTY OF MARION** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).

The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)."

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 1/19/2012**

  s/ MICHAEL J. REAGAN
**U.S. District Judge**
