**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UCHE PHILLIP MORDI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **TODD ZIEGLER, NATHAN ZERRUSEN,** | ) | |
| **ROB RICH, COREY RISTVEDT, MYRON** | ) | |
| **PANSING, GREG CHANCE, GREGG** | ) | |
| **HEALEY, RICHARD KAMMINGA,** | ) | **Case No. 11-cv-193-MJR-SCW** |
| **EDWARD DETERS, RALPH FOWLER,** | ) | |
| **JOHN MONNET,      JERRY DEVORE,** | ) | |
| **EFFINGHAM COUNTY SHERIFF'S** | ) | |
| **DEPARTMENT, COUNTY OF** | ) | |
| **EFFINGHAM, MARION COUNTY** | ) | |
| **SHERIFF'S DEPARTMENT, and** | ) | |
| **COUNTY OF MARION** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

**Williams, Magistrate Judge:**

In this § 1983 civil rights case, *pro se* Plaintiff Uche Phillip Mordi alleges that a number of Defendants, including Ziegler, Zerrusen, Rich, Ristvedt, Pansing, Chance, Healey, Kamminga, Deters, Fowler, Monnet, and DeVore, all failed to inform him of his right to consular assistance under Article 36 of the Vienna Convention. Plaintiff also raises *Monell* claims based on the same violation against Effingham and Marion Counties. Specifically, Plaintiff alleges that he was pulled over by the Illinois State Police and arrested after a traffic stop found drugs in his car. No member of the Illinois State Police informed him that he had a right to consular assistance. He was then booked into Effingham County Jail. No person at the jail informed him of his right to consular assistance. Illinois initiated criminal proceedings against him, during which no one informed him of

1

his right to consular notification.  Those proceedings were eventually terminated in favor of a federal prosecution.  He was then transferred to Marion County jail as a federal prisoner and brought to trial on federal drug charges.  Once again, no one at Marion County jail informed him of his right to consular assistance.

Now before the Court are three Motions for Summary Judgment.  The Illinois State Police Defendants filed a Motion for Summary Judgment on February 11, 2013 (Doc. 55).  Subsequently, the Marion County Defendants filed their own Motion for Summary Judgment on March 6, 2013, incorporating by reference many of the arguments raised by the Illinois State Police Defendants. (Doc. 59).  Finally, the Effingham County Defendants also filed a Motion for Summary Judgment, and likewise incorporated by reference arguments raised by their co-defendants.  (Doc. 61).  Plaintiff filed Responses to all three Motions in which he included cross-motions for summary judgment. (Docs. 64, 76, and 79).  The Effingham County Defendants and the Marion County Defendants have responded to Plaintiff's cross motions for summary judgment with their own Motions to Strike as being filed out of time.    (Docs. 80 and 81).    For the reasons that follow, it is **RECOMMENDED** that Defendants Marion and Effingham County Defendants' Motions for summary judgment be **GRANTED**, and the Illinois State Police's Motion for Summary Judgment be **DENIED in part and GRANTED in part**.

### FACTUAL BACKGROUND

The following factual assertions are supported by Plaintiff's Deposition, two affidavits from Defendants Zeigler and Chance, authenticated documentation submitted by the Defendants, and the pleadings.

Plaintiff was born in Nigeria (Plaintiff's Dep. p. 6).  He moved to the United States in 1999 with his mother, when he was approximately thirteen or fourteen. (Plaintiff's Dep. p. 8).  His mother is not an American citizen.  (Plaintiff's Dep. p. 9).  Plaintiff was in the country legally and had a

green card, but at no time was he an American citizen. (Plaintiff's Dep. p. 9).  At the time of his arrest, Plaintiff was attending Southern Illinois University.  (Plaintiff's Dep. p. 10).  He had a valid social security number and an Illinois driver's license.  (Plaintiff's Dep. p. 11).

Plaintiff was pulled over by Defendant Zeigler on March 12, 2009 for having his license plate mounted in his windshield rather than on the bumper of his car.  (Plaintiff's Dep. 15-16). Zeigler asked Plaintiff to get into his car while he ran his license; while he was there, Zeigler discovered an outstanding warrant from a neighboring county outside of Zeigler's jurisdiction. (Plaintiff's Dep. p. 17).  Defendant Zerrusen responded to the scene in a separate car.  (Plaintiff's Dep. p. 18).  Zeigler wrote Plaintiff a citation and then began questioning him about drugs. (Plaintiff's Dep. p. 18-19).  Zeigler asked for permission to search the car, which Plaintiff denied. (Plaintiff's Dep. p. 19).  Zeigler then informed Plaintiff that he would have to wait for a K-9 unit to arrive. (Plaintiff's Dep. p. 19).  Plaintiff believes that he had a conversation with Zeigler about how his name was Nigerian.  (Plaintiff's Dep. p. 20).  Plaintiff does not recall specifically telling Zeigler he was from Nigeria.  (Plaintiff's Dep. p. 20).  Zeigler did not ask Plaintiff any questions about his origin or citizenship.  (Plaintiff's Dep. p. 21).  Plaintiff did not tell Zeigler that he was not a citizen or that he had a green card.  (Plaintiff's Dep. p. 21).  Plaintiff did not speak with Zerrusen during the traffic stop and did not tell him that he was not a citizen.  (Plaintiff's Dep. p. 22).  Plaintiff did not speak to Rob Rich during the traffic stop and did not tell him that he was not a citizen.  (Plaintiff's Dep. p. 22-23).  After drugs were found in Plaintiff's car, Zeigler arrested him, searched him, handcuffed him, brought him to the Illinois State Police Department, placed him in an interrogation room, and arranged for him to be interviewed.  (Plaintiff's Dep. p. 23).  Zeigler never asked Plaintiff any questions regarding his citizenship or green card status.  (Plaintiff's Dep. p. 25).  An Illinois State Police Field Report purportedly filled out by Zeigler lists Plaintiff's place of birth as Nigeria.  (Doc. 66).  While Plaintiff did not properly authenticate this exhibit, Zeigler swore out an affidavit denying

3

authorship of each of Plaintiff's exhibits, except for the Illinois State Police Field Report. (Zeigler Aff., Doc. 69-1).  He further denied that he knew that Plaintiff was a Nigerian citizen. (Zeigler Aff., Doc. 69-1).   Plaintiff believes that Zeigler watched his interrogation through a two way mirror, but cannot say for sure.  (Plaintiff's Dep. p. 27-28).

Greg Chance and Gregg Healey interviewed Plaintiff at the station.  (Plaintiff's Dep. p. 31). Agent Kamminga took his picture as part of the booking process.  (Plaintiff's Dep. p. 31-32). Kamminga never asked him any questions about citizenship and Plaintiff did not discuss his citizenship with him.  (Plaintiff's Dep. p. 38).   During his interview with Chance and Healey, Plaintiff identified himself as Nigerian and stated that he was not a United States citizen.  (Plaintiff's Dep. p. 32).  After his interview, Zeigler took Plaintiff to the Effingham County Jail.  (Plaintiff's Dep. p. 41).  An interview Report with Chance and Healey's names on it indicates that Plaintiff's place of birth is Nigeria.  (ISP Ex. 2, Doc. 55-6).  It should also be noted that according to an Exhibit submitted separately by the Effingham County Defendants and Plaintiff, the Illinois State Police has an official written policy requiring that foreign nationals be notified of their right to seek consular assistance.  (Doc. 61-2).

Plaintiff did not speak to Master Sergeant Myron Pansing; he identified him from the record he received.  (Plaintiff's Dep. p. 41).  He never spoke to him or told him that he was a Nigerian citizen.  (Plaintiff's Dep. p. 42-43).  Likewise, Plaintiff did not interact with Cory Ristvedt, but rather identified him from the record as the person who dispatched the ISP officers.  (Plaintiff's Dep. p. 43).  Plaintiff has no evidence that Ristvedt was aware of his nationality prior to this lawsuit. (Plaintiff's Dep. p. 44).

When Plaintiff arrived at the Effingham County jail, the officer conducting intake asked him if he was a citizen of the United States and Plaintiff said he was Nigerian.  (Plaintiff's Dep. p. 48). Plaintiff never came into contact with Sheriff Monnet.  (Plaintiff's Dep. p. 49).  Plaintiff was at the

Effingham County Jail for approximately three to four weeks; during this time, he never spoke to anyone other than the intake clerk about his immigration status, although someone informed him that ICE had issued a detainer.  (Plaintiff's Dep. p. 49-50).

Plaintiff was transferred to the Marion County Jail after approximately three to four weeks because he was indicted on federal charges.  (Plaintiff's Dep. p. 62).  Plaintiff never met Jerry Devore, the Sheriff of Marion County, or spoke to him regarding his citizenship.  (Plaintiff's Dep. p. 74-75; 79).  When Plaintiff arrived at Marion County on April 13, 2009, he also went through an intake process, which again asked Plaintiff about his citizenship.  (Plaintiff's Dep. p. 79-80).

Deters and Fowler were the Illinois State's Attorneys who prosecuted Plaintiff's state case.  (Plaintiff's Dep. p. 54).  Plaintiff was present when they addressed his immigration status with the judge.  (Plaintiff's Dep. p. 54).  Plaintiff had a public defender during his state criminal proceedings, however, they never discussed his citizenship.  (Plaintiff's Dep. p. 55).  Plaintiff eventually pled to federal drug charges; his agreement indicated that he would be deported to Nigeria after serving his sentence.  (Plaintiff's Dep. p. 64).

Plaintiff also testified that he was unaware of his right to consular assistance until long after his criminal proceedings were concluded. (Plaintiff's Dep. p. 94-97).  He does not know whether the Nigerian consulate or embassy would have agreed to assist him in his defense. (Plaintiff's Dep. p. 90).  He also does not know specifically what assistance they could have provided to him. (Plaintiff's Dep. p. 90).  Plaintiff speculates that the consulate could have hired a better lawyer for him as opposed to a public defender.  (Plaintiff's Dep. p. 98).  Plaintiff has never represented himself as an American citizen and any documents containing that information would have not come from him.  (Plaintiff's Dep. p. 89-90).

Plaintiff stated in his deposition that he was damaged in various ways because his case could have had a better outcome.  (Plaintiff's Dep. p. 98).  However, Plaintiff concedes in his Response

that many of the damages he speculated about at his depositions are unavailable in this case. Plaintiff also believes he suffered from emotional harm as a result of not being informed of his right. (Plaintiff's Dep. p. 104). Plaintiff also testified that he was not aware of Decree 33, a Nigerian law that allows Nigerian citizens to be re-arrested for narcotics crimes after serving their sentences in another country, until his deportation proceedings. (Plaintiff's Dep. p. 122-124).

ANALYSIS

## 1. Summary Judgment Standard

Summary judgment, which is governed by FEDERAL RULE OF CIVIL PROCEDURE 56, is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).[1] The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010). *Accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the Court must view the record in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But after a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. A mere scintilla of evidence is insufficient: a party will successfully oppose summary judgment only when it presents definite, competent

---

[1] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. *Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011).

evidence to rebut the motion. *Albiero*, 246 F.3d at 931–32.  *See also Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (internal quotation marks omitted).

## 2. Section 1983 permits an individual to bring claims based on violations of the Vienna Convention

Defendants urge the Court to grant summary judgment on the grounds that the Vienna Convention does not grant an individual a private right of action to bring suit.  This position is against the holding of the Seventh Circuit.[2]

The Supreme Court has assumed, without deciding, that Article 36 of the Vienna Convention creates individual rights.  **Vienna Convention on Consular Relations, April 24, 1963, 21 U.N.T.S. 77, T.I.A.S. No. 6820, 596 U.N.T.S. 261;** *Beard v. Greene*, **523 U.S. 371 (1998).**  Most lower courts continued to use the Supreme Court's "hypothetical" posture when deciding cases raising Vienna Convention claims.  The Seventh Circuit, however, held that the Vienna Convention did indeed create individual rights, which could be vindicated pursuant to 42 U.S.C. § 1983.  *Jogi v. Voges*, **(Jogi II) 480 F.3d 822, 825 (7th Cir. 2007).**  This holding is also consistent with the International Court of Justice's determination.  *See U.S. ex rel. Madej v. Schomig*, **No. 98 C 1866, 2002 WL 31386480 at *1 (N.D. Ill. Oct. 22, 2002) (citing** *LeGrand Case*, **2001 I.C.J. 104 at ¶ 77)**.  Therefore, because *Jogi* is still good law in the Seventh Circuit, the Court should refrain from granting summary judgment on this ground.

## 3. *Heck v. Humphrey* does not bar Plaintiff's Claims.

---

[2] The Court recognizes that there is a circuit split on this issue, but declines to address it in this case.  *See Mora v. New York*, 524 F.3d 183, 191, 209 (2d Cir. 2008); *Gandara v. Bennett*, 528 F.3d 823, 823 (11th Cir. 2008); *Cornejo v. County of San Diego*, 504 F.3d 853, 855 (9th Cir. 2007); *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001).

Defendants also argue that *Heck v. Humphrey* bars Plaintiff's claims. A plaintiff seeking damages for an allegedly unlawful conviction and sentence "must prove that the conviction or sentence has been reversed on direct appeal," or otherwise corrected through another proceeding. **Heck v. Humphrey, 512 U.S. 477, 486-887 (1994).** The purpose behind this requirement is to prevent prisoners from doing an "end run" around habeas requirements by seeking relief, such as damages, traditionally unavailable in habeas proceedings. **Wilkinson v. Dotson, 544 U.S. 74, 91 (2005)**. The *Jogi II* court found that *Heck* did not bar plaintiff's claims in that case. **Jogi v. Voges, (Jogi II), 480 F.3d 822, 836 (7th Cir. 2007).** In *Jogi I,* the Court explained its logic more fully, analogizing that a claim under the Vienna Convention is similar to a Fourth Amendment claim, and would not be barred under *Heck*. **Jogi v. Voges, (Jogi 1), 425 F.3d 367, 386 (7th Cir. 2005) withdrawn and superseded by Jogi II, 480 F.3d 822 (7th Cir. 2007).** Other district courts have proceeded under the assumption that *Heck* will not bar a Vienna Convention Claim premised on § 1983, **see Brown v. U.S. ICE, No. 07 C 3015, 2008 WL 4813083 at *1 (N.D. Ill. Oct. 28, 2008) (noting that the Court dismissed Plaintiff's claims challenging his conviction as barred by** *Heck* **but allowed the Vienna Convention claims to proceed)**, and as Plaintiff states in his brief, the threshold order in this case makes the same presumption. (Doc. 8).

Here, as Plaintiff specifically points out in his Response to Defendants' Motion (Doc. 64), he is not challenging his conviction. Plaintiff is alleging that his injury was being deprived of his right to consular assistance because he was never informed of his right. He points out that any allegation that he would not have been convicted is speculative, and insists that he does not make such claims here. Defendants argue that the *Jogi I* and *Jogi II* courts rested their findings that the case was not barred by *Heck* on the fact that Jogi had been released during the pendency of his case. While it appears that the court considered this fact, they also gave additional reasoning for their decision, and the undersigned notes that Jogi was very much incarcerated when he filed his suit—a posture that

would trigger the *Heck* bar, if it applied.  **See Heck v. Humphrey, 512 U.S. 477, 489 (1994) (holding that a plaintiff in a § 1983 claim must show favorable *termination* of his criminal proceedings before the case can be heard) (emphasis added)**.  Therefore, Court should find that Plaintiff does not seek to challenge his conviction and that his case is not barred by *Heck*.

### 4. Defendants are not entitled to summary judgment because of a dispute over which damages are available

Defendants also appear to be making an argument that they are entitled to summary judgment if no damages are available to Plaintiff, a position they also adopt. A fundamental principle of our law holds that where there is a right, there is a remedy.  **Marbury v. Madison, 5 U.S. (1 Cranch) 137, 166 (1803) ("But where a specific duty is assigned by law, and the individual rights depend on the performance of that duty, it seems equally clear that the individual who considers himself injured, has a right to resort to the laws . . . for a remedy.")**.  Additionally, a § 1983 plaintiff need only demonstrate that his claim falls under § 1983, as the statute itself explicitly supplies a remedy.  **Jogi v. Voges (Jogi II), 480 F.3d 822 (2007) (citing *Gonzaga University v. Doe*, 536 U.S. 273, 284 (2002))**.  It is difficult to see how, having found that a Vienna Convention claim brought pursuant to § 1983 grants a plaintiff both a right and remedy, a court could find that no damages are available.  Granting summary judgment on those grounds would gut the Seventh Circuit's decision in *Jogi*, and accordingly, to the extent that Defendants are making that argument, the Court should reject it.

More specifically, Defendants argue that Plaintiff cannot establish compensatory damages because the actual damages he complains of stem from his criminal conviction.  Plaintiff concedes as much in his Response Brief, and also concedes that he cannot establish but for the Vienna Convention violation, he would not have been convicted. (Doc. 64)  Plaintiff's request for compensatory damages stemming from his conviction, including his sentence and the forfeiture of

his property are properly barred by *Heck*. **Heck v. Humphrey, 512 U.S. 477, 487 (1994)**.  Since Plaintiff has conceded this point, the Court need not address it further, except to say that while Plaintiff is correct that legal fee reimbursement may be available, typically such a request would be made by separate motion after prevailing on the merits, and that legal fees are not properly an element of compensatory damages.  As a final matter, compensatory damages for emotional distress prior to his conviction may be available, but Plaintiff has not submitted any evidence that he suffered any actual emotional distress or that he suffered a physical injury as required by the PLRA.  **See 42 U.S.C. § 1997e ("No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury. . .")**.  Therefore, Plaintiff's claim for compensatory damages should be stricken.

Defendants also argue that Plaintiff is not entitled to nominal damages.  Defendants' argument is based on the preposition that non-constitutional violations can never be eligible for nominal damages.  None of the case law cited to by Defendants is analogous to the present situation.  For example, Defendants cite *Stachniak* for the proposition that only constitutional violations trigger nominal damages.  However, that is not a holding of that case, and as correctly pointed out by Plaintiff, the court was addressing the issue of whether the defendants in the case were entitled to a jury instruction on nominal damages on the theory that the plaintiff had suffered no actual injury.  **Stachniak v. Hayes, 989 F.2d 914, 924 (7th Cir. 1993)**.  The underlying source for the language in *Stachniak* is *Memphis Community School Dist. v. Stachura*, a case which rejected awarding compensatory damages based on abstract concepts of the "value" of constitutional rights in favor of nominal damages, but otherwise did not limit their availability.  **477 U.S. 299, 310 (1986)**.  It also did not address the availability of damages where a plaintiff was bringing claims based on the Vienna convention. Likewise the other cases cited by Defendants are not controlling in this circuit.

Plaintiff's claims to nominal damages should be allowed to proceed. "Rights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interest they protect." ***Carey v. Piphus*, 435 U.S. 247, 254 (1978).** The Supreme Court has specifically found that § 1983 protects *any right* guaranteed by the laws of the United States, not just constitutional or fundamental rights. ***Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis added).** Damages for claims under § 1983 are governed by the compensation principle from the common law principles of tort law; in cases where there is no easy analogy, it falls to the courts to determine what recompense is due. ***Id.* at 258-59 (citing *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 409 (Harlan, J., concurring) (1971))**. Nominal damages are available for deprivations of "absolute" rights—rights that are guaranteed regardless of the merits of a plaintiff's substantive allegations—where the deprivations has not caused actual injury. ***Id.* at 266; *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999)**. At least one court has found nominal damages available where the alleged conduct violated a federal statute, as opposed to the Constitution. ***Cassidy v. Indiana Dept. of Correction*, 59 F.Supp.2d 787, 793 (S.D. Ind. 1999).** Plaintiff seeks redress for violation of a right guaranteed by international treaty. That right is important enough to justify the imposition of nominal damages.

Finally, Defendants argue that Plaintiff is not entitled to punitive damages. Defendants first argue that Plaintiff cannot be entitled to punitive damages because he is not entitled to nominal or compensatory damages. As Plaintiff's claims for nominal damages will proceed, the undersigned likewise rejects this argument. Defendants next argue that Plaintiff has not made the requisite showing of intent to justify an award of punitive damages.

Section 1983 allows the recovery of punitive damages where the complained-of conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference

to federally protected rights. *Smith v. Wade*, **461 U.S. 30, 46-49 (1983)**. Reckless indifference can be inferred from the evidence without an admission of intent, however, typically this is a task for the fact-finder. *Kyle v. Patterson*, **196 F.3d 695, 697-98 (7th Cir. 1999);** *Merriweather v. Family Dollar Stores of Indiana, Inc.*, **103 F.3d 576 (7th Cir. 1996).** Subjective intent must be inferred unless directly admitted. *Washington v. Hively*, **695 F.3d 641, 643 (7th Cir. 2012)**. The Seventh Circuit has upheld an award of punitive damages where the evidence in the record suggested that a Defendant was aware of a relevant regulation and its requirements and chose not to follow it. *Merritt v. De Los Santos*, **721 F.2d 598, 602 (7th Cir. 1983).**

While Defendants Chance and Healey are correct that the Seventh Circuit has recognized an exception "where a plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of the defendants' actions," *Kyle* addressed a situation where the parties agreed that the constitutional violation was caused in part by delay on behalf of a third party. *Kyle*, **196 F.3d at 698**. Here, Defendants Chance and Healey have attempted to establish that the law provides them with no incentive to violate Plaintiff's rights. That is the very function of law. Defendants Chance and Healey also argue that they acted to protect Plaintiff's other constitutional rights, such as Miranda, and his Sixth Amendment Right to counsel. Again, their duty requires no less, but those rights are not the rights at issue here. Additionally, Defendants Chance and Healey have not submitted any evidence on their specific intent. In support of their Motion for Summary Judgment, they attached a copy of the Illinois State Police Personal History Report that they filled out for Plaintiff's passenger, a document with little relevance to this case. (Doc. 55-6). Defendant Chance also submitted an affidavit in Reply to Plaintiff's Response (Doc. 69-1). The affidavit failed to address Chance's intent in conducting his interview, indicated that Chance knew Plaintiff was a Nigerian citizen, and was silent as whether Chance informed Plaintiff of his right to consular notification. (Doc. 69-1). Neither Chance or Healey has alleged

that they were unaware of the Vienna Convention.  Based on the evidence, a reasonable fact finder could conclude that the Defendants knew of their obligations under the treaty and ignored them, like the defendant in *Merritte*.  Therefore, the undersigned finds that there is a material issue of fact as to Chance and Healey's specific intent, and Plaintiff's claims for punitive damages against them should proceed accordingly.  The undersigned also notes that Defendants only raised the issue of intent as to Chance and Healey.

### 5.  Defendants' ignorance of Plaintiff's Nationality

The Illinois State Police and Marion County Defendants next argue that they are entitled to summary judgment because (with the exception of Chance and Healey), they did not know that Plaintiff was a Nigerian citizen.

While Defendants' briefing on this point is under-developed, the undersigned will construe their arguments broadly.  Generally, a plaintiff in a § 1983 case has to show 1) he held a protected right; 2) he suffered a deprivation of that right; 3) the defendants intentionally caused this deprivation; and 4) the defendants acted under color of state law.  ***Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir. 1990)**.  Whether conduct was "intentional" requires an inquiry into the actor's mental state.  ***See Duane v. Lee*, 959 F.2d 673, 676 (7th Cir. 1992) (". . . prison officials who fail to prevent an injury . . .  are liable only where those officials possess the requisite mental state . . . The requisite mental state, moreover is intent, or some functional equivalent, such as deliberate indifference.") (internal citations and quotation marks omitted)**.  Furthermore, actual knowledge can be an important element in considering whether conduct was intentional.  A prisoner typically needs to show either actual knowledge or that the relevant fact was so obvious that a reasonable person could have inferred it.  ***See id. (citing Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985))**.

Here, Plaintiff admits that he never met Defendants Ristvedt and Pansing. He never spoke to them or had any evidence that they were aware of his nationality. Therefore, Ristvedt and Pansing lack the intention to violate Plaintiff's rights because they had no knowledge that would have informed them that additional rights were due. Likewise, although Defendants Zerrusen and Kamminga were marginally involved in Plaintiff's arrest and detention, Plaintiff also testified that he did not identify himself as a Nigerian citizen to either of them. Likewise, Plaintiff cannot prove that either of those Defendants had the requisite intent or that the situation was so obvious that an objective person would have been aware of Plaintiff's citizenship. Therefore, the undersigned finds that Plaintiff has not created a material issue of fact as to the knowledge of Defendants Zerrusen, Pansing, Ristvedt, or Kamminga, and they should be entitled to summary judgment.

As to Defendant Zeigler, a material issue of fact exists as to whether Zeigler knew Plaintiff's citizenship, and therefore summary judgment as to him would be inappropriate. Zeigler has submitted evidence that despite knowing that Plaintiff was born in Nigeria and had a Nigerian name, he was unaware of Plaintiff's citizenship. Zeigler also does not substantially contest that he knew Plaintiff was born in Nigeria; he argues that this information would not necessarily put him on notice that Plaintiff was a Nigerian citizen. Plaintiff has submitted evidence that Zeigler was substantially involved in his arrest and detainment. Zeigler also failed to deny authorship of a document showing Plaintiff's place of birth. This is sufficient to create a material issue of fact on both Zeigler's subjective knowledge and as to whether a reasonable person in his position would have known that Plaintiff was a Nigerian citizen. Zeigler, Chance, and Healey are not entitled to summary judgment on this point.

### 6.  Qualified Immunity

Officers have immunity from suit in some situations in order to protect them in the exercise of their discretion. ***Harlow v. Fitzgerald*, 457 U.S. 807, 815 (1982).** In order to determine whether

the defense applies, a court must decide whether 1) the complained of conduct violated the prisoner's constitutional rights and 2) whether the right was clearly established at the time of the alleged violation. ***Saucier v. Katz*, 533 U.S. 194 (2001).** A court does not have to follow the rigid two-step sequence if the matter could be resolved easily on one point over the other. ***Pearson v. Callahan*, 555 U.S. 223, 236 (2009).** If the court determines that there are material questions of fact on the merits of a prisoner's claim, suitable for resolution by a jury, they will not be able to grant summary judgment based on the first prong of the *Saucier* test. ***Lewis v. Downy*, 581 F.3d 467, 478 (7th Cir. 2009)**. Whether a right is clearly established at the time of the alleged violation is a question of law and suitable to resolution on summary judgment. ***Id.***

The Illinois State Police Defendants do not substantially argue that the conduct here did not violate the prisoner's rights. Instead they argue that the violation was not clearly established at the time of the violation. In the absence of relevant case law, the ISP Defendants cite to the United States Department of State Consular Notification and Access Standard Operating Procedure Manual (hereinafter "State Department Exhibit") to show that it the Vienna Convention allegedly does not attach until booking. Defendants argue that in light of the manual, they could not have known that arrest would trigger the notification requirement. However, this interpretation is contradicted by the text of the treaty: "if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending if, within its consular district, a national of that State is *arrested or committed to prison or custody pending trial or is detained in any other matter.*" **Vienna Convention on Consular Relations, April 24, 1963, 21 U.N.T.S. 77, T.I.A.S. No. 6820, 596 U.N.T.S. 261 (emphasis added).** The Convention itself speaks of "arrest" or "detention," not booking. The parties do not substantially dispute that ISP did the arresting and detaining here. Additionally, as the text of the State Department Exhibit makes clear, it is not a binding regulation, but rather "[a] model standard operating procedure . . . intended for law enforcement agencies to

use as a template." (Doc. 55-6, p. 8).  In fact, the Illinois State Police Department has promulgated their own policy regarding the Vienna Convention, which clearly states: "Whenever an ISP officer arrests, imprisons, or otherwise detains a foreign national, the officer must promptly inform the detainee of his or her right to have their government informed of such event." (Doc. 61-2, p. 2). The ISP has made a policy choice to adopt the language of Article 36 over the proposed model policy recommended in the State Department Exhibit.  The Vienna Convention was ratified in 1963, and the ISP policy was last revised in 2007.  The ISP Defendants' argument that they were unaware of any obligation is simply implausible and the Court should decline to grant summary judgment to the ISP Defendants on this ground.

The other Defendants have the stronger argument.  **See Belbachir v. County of McHenry, et al., No. 06 C 1392, 2012 WL 4595344 at *5 (N.D. Ill. September 28, 2012) (finding that jail defendants were entitled to qualified immunity because no case had established an obligation to notify a detainee of her rights under the Vienna Convention where another agency did the actual detaining).**  Defendant Monnet did not participate in the arrest and detention of Plaintiff.  It would have been reasonable for him to assume that since ISP arrested and detained Plaintiff, they would take responsibility for the consular notification requirement.  Where reasonable officers could differ, qualified immunity applies.  **See Hunter v. Bryant, 502 U.S. 224, 228 (1991)**.  Defendant Rich had more involvement in Plaintiff's arrest.  However, it is clear from Plaintiff's testimony that his role was primarily investigatory.  Plaintiff testified that Rich provided the K-9 unit that found cause to believe Plaintiff's car had drugs.  Plaintiff has not submitted any evidence that Rich spoke to him or participated in his actual arrest.  Therefore, the undersigned finds that a reasonable K9 officer could assume that where his participation in an arrest was only investigatory assistance, that the obligation to notify a foreign arrestee of their right to consular

notification would not lie with him. For that reason, Defendant Rich is also entitled to qualified immunity. Defendants Rich and Monnet should be **DISMISSED with prejudice.**

The same logic applies to Sheriff Devore. Plaintiff concedes, both in his deposition testimony and in his Response to Marion County's Motion for Summary Judgment, that he never met or spoke with Sheriff Devore. (Doc. 78). It is also undisputed that Plaintiff was moved to Marion after spending several weeks at Effingham County jail. The undersigned finds that a reasonable officer would not know that he had a duty to inform a prisoner of his rights under the Vienna Convention where the prisoner had been arrested and detained by one agency, and housed at another for several weeks. Devore was not the arresting officer, and Plaintiff had been booked and housed elsewhere prior to moving into Devore's custody. Plaintiff has not cited to any case law suggesting liability on these facts. Devore should be entitled to qualified immunity and should be dismissed with prejudice.

### 7. Absolute Immunity

Defendants Deters and Fowler have argued that they are entitled to absolute immunity. Absolute immunity is available to prosecutors when they are performing "core prosecutorial actions." *Hartman v. Moore*, **547 U.S. 250, 261-62 (2006).** A prosecutor has immunity for initiating prosecution and for acting as an advocate, although immunity may be unavailable if a prosecutor steps outside of that role to conduct investigative or administrative tasks. *Buckley v. Fitzsimmons*, **509 U.S. 259, 272-73 (1993);** *Spiegel v. Rabinovitz*, **121 F.3d 251. 257 (7th Cir. 1997)**. Generally, a prosecutor's role as an advocate begins at the time of arrest. *Anderson v. Simon*, **217 F.3d 472, 475 (7th Cir. 2000)**.

Here, although Plaintiff has alleged that Deters and Fowler violated his rights by failing to inform him of his right to consular notification, Plaintiff admitted in his deposition that he only saw Deters and Fowlers during his abbreviated state court proceedings. (Plaintiff's Dep. p. 119). He

17

never spoke to them directly.  (Plaintiff's Dep. p. 119).  In fact, Deters and Fowler would speak to the judge as opposed to speaking to Plaintiff directly.  (Plaintiff's Depo. p. 120).  It is clear from Plaintiff's testimony that his only interaction with Deters and Fowler was while they were engaged in their role as advocates for the State of Illinois.  Their decision not to inform Plaintiff of his rights, a role that would traditionally fall to Plaintiff's counsel, can be seen within the context of their role as advocate.  Therefore, Deters and Fowler should be entitled to prosecutorial immunity for their decision not to speak to an adverse party about his rights, and should be dismissed with prejudice.

**8.  Monell Claims- Counties cannot be held liable where no employee is liable**

The Supreme Court's decision in *Monell* allows a plaintiff to bring claims against a municipality for policies and customs that violate the Constitution.  ***Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658 (1978)**.  Generally, a municipality will not be held liable without a showing that an individual defendant violated plaintiff's rights.  ***Los Angeles v. Heller*, 475 U.S. 796 (1986)**.  However, there are exceptions, particularly where an individual defendant is not liable due to an affirmative defense.  ***Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 305 (7th Cir. 2009)**.  "A municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict."  ***Id.*  (emphasis in original).**  Three factors determine whether a finding against the municipality would be inconsistent: 1) the nature of the constitutional violation, 2) the theory of municipal liability, and 3) the asserted defenses.  ***Id.***  In *Thomas*, the court found that it was consistent to hold a county liable where the county's policies interfered with its employees' abilities to address a prisoner's medical needs, even though the fact finder found the employees not deliberately indifferent.  ***Id.***

Here, the undersigned has accepted the individual Effingham County and Marion County defendants' arguments that they should be dismissed based on the second prong of the *Saucier* test, on the grounds that the violation was not clearly established.  As more fully discussed above, the

undersigned found that no decision has established that the custodian has on obligation to inform a prisoner of his right to consular notification where the custodian is not the arresting agency.  It would not be inconsistent to grant the individual defendants summary judgment on this ground and likewise grant Marion County and Effingham County summary judgment on the grounds that they need not have policies addressing un-established rights.  Therefore, the undersigned recommends that the Court dismiss Effingham and Marion Counties with prejudice under *Heller*.

### 9.  Plaintiff's Cross Motions for Summary Judgment

Plaintiff has moved for cross-summary judgment in all of his Responses to the ISP, Marion and Effingham County Defendants.  Should the Court accept the undersigned's recommendation and grant the Effingham County and Marion County Defendants' Motions for Summary Judgment, Plaintiff's Cross Motions as to those Defendants would be **MOOT**.  Additionally, the Marion County Defendants and the Effingham County Defendants have filed Motions to Strike (Docs. 80 & 81) Plaintiff's cross motions for summary judgment, which would also be **MOOT** if the Court accepts the undersigned's recommendations.  The undersigned now turns to Plaintiff's Cross Motion for Summary Judgment as to ISP Defendants Healey, Chance, and Zeigler.

As noted above, the undersigned finds that there is a material issue of fact as to the exact perimeters of Defendant Zeigler's knowledge.  As Plaintiff's cross-motion offers no further evidence on that point, the undersigned recommends that Summary Judgment be denied as to Ziegler.  As to Defendants Healey and Chance, there is no dispute that they knew that Plaintiff was a Nigerian citizen.  What is not clear from the record is whether Healey and Chance knew that Plaintiff's rights under the Vienna Convention had been violated or would be violated by their individual failure to take action.  This speaks to their intent, an issue traditionally left to the fact-finder.  Neither party has submitted any evidence on who at the ISP is responsible for informing foreign nationals of their rights.  Without further context as to the import of Healey and Chance's knowledge, the

undersigned recommends that the Court deny Plaintiff's cross-motion for summary judgment as to the ISP Defendants Zeigler, Healey, and Chance.

CONCLUSION

The ISP Defendant's Motion for Summary Judgment as to Gregory Chance, Gregg Healey, and Todd Zeigler (Doc. 55) should be **DENIED in part** and **GRANTED in part** as to Defendants Myron Pansing, Cory Ristvedt, Nathan Zerrusen, and Richard Kamminga. The undersigned **RECOMMENDS** that Defendants Pansing, Ristvedt, Zerrusen, and Kamminga be **DISMISSED with prejudice**. Plaintiff's compensatory damage claims against Defendants Chance, Healey, and Zeigler should be **STRICKEN**. Defendants Rob Rich, Edward Deters, Ralph E. Folwer, John H. Monnet, Effingham County Sheriff's Department and County of Effingham's Motion for Summary Judgment (Doc. 61) should be **GRANTED** and those Defendants **DISMISSED with prejudice**. Defendants Sheriff Devore, Marion County and Marion County Sheriff's Department's Motion for Summary Judgment (Doc. 59) should be **GRANTED** and those Defendants **DISMISSED with prejudice**. Therefore, only the claims for nominal and punitive damages against the Illinois State Police Department Defendants Zeigler, Chance, and Healey will survive, should this report and recommendation be accepted.

Plaintiff's Cross Motion for Summary Judgment as to Defendants Chance, Healey, and Zeigler (Doc. 64) should be **DENIED**. Plaintiff's Cross Motion for Summary Judgment as to the Effingham County Defendants (Doc. 76) should be **DENIED as moot**, and that Plaintiff's Cross Motion for Summary Judgment as to the Marion County Defendants (Doc. 79) should be **DENIED as moot.** Finally, the Effingham County and Marion County Defendants' Motions to Strike (Docs. 80 and 81) should be **DENEID as moot**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection

may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).**

**<u>Objections to this Report and Recommendation must be filed on or before July 29, 2012</u>.**


**DATE: <u>July 11, 2013</u>**                        <u>***/s/ Stephen C. Williams***</u>
                                                            **STEPHEN C. WILLIAMS**
                                                            United States Magistrate Judge