IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UCHE PHILLIP MORDI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TODD ZEIGLER, NATHAN ZERRUSEN, ROB RICH, COREY RISTVEDT, MYRON PANSING, GREG CHANCE, GREGG HEALEY, RICHARD KAMMINGA, EDWARD DETERS, RALPH FOWLER, JOHN MONNET, JERRY DEVORE, EFFINGHAM COUNTY SHERIFF'S DEPARTMENT, COUNTY OF EFFINGHAM, MARION COUNTY SHERIFF'S DEPARTMENT, and COUNTY OF MARION, | ) ) ) ) ) Case No. 11–cv–0193–MJR–SCW ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**REAGAN, District Judge:**

### INTRODUCTION AND PROCEDURAL HISTORY

The Vienna Convention on Consular Relations (Vienna Convention), Apr. 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820, 596 U.N.T.S. 261, is a multilateral treaty to which both the United States and Nigeria are signatories. *See Osagiede v. United States*, **543 F.3d 399 (2008)**. The treaty governs relations between individual nations and foreign consular officials. *Id.* **at 402 (quoting** *Sanchez-Llamas v. Oregon*, **548 U.S. 331, 336 (2006) (Breyer, J., dissenting)).** Article 36 of the Vienna Convention imposes three obligations on an authority detaining a foreign national: (1) to inform the consulate of the foreign national's arrest or detention without delay; (2) to forward communications from a detained national to the consulate without delay; and (3) to inform

1

a detained foreign national of his rights under Article 36 without delay. *Id.* **(citing Vienna Convention, art. 36(1)(b)).**

Plaintiff Uche Phillip Mordi, a Nigerian national, was not informed of his Article 36 rights when the Illinois State Police arrested him during a 2009 traffic stop, and did not find out about those rights until 2010, when residing in federal prison. (In the interim, he had pled guilty to federal drug charges; Plaintiff is currently incarcerated in an Ohio Correctional Center that contracts with the Federal Bureau of Prisons). In 2011, and pursuant to 42 U.S.C. § 1983, Plaintiff sued myriad state and local officials, plus the Illinois State Police ("ISP") and two local sheriff's departments, on multiple constitutional and treaty-based theories. On 28 U.S.C. § 1915A threshold review, the undersigned dismissed all Plaintiff's claims except for his allegations his Article 36 rights were violated by the state troopers who arrested him (Defendants Zeigler and Zerrusen), other individual officers along his chain of custody (Chance, Healey, Kamminga, Pansing and Rivstedt of the ISP; Rich, Fowler, and Monnet of the Effingham County Sheriff's Department; and Sheriff Devore of the Marion County Sheriff's Department), and two state prosecutors (Deters and Fowler). Plaintiff's *Monell* claims against the sheriff's departments of Effingham and Marion counties also survived screening.

All Defendants filed summary judgment motions in early 2013. Plaintiff filed his own summary judgment motion on March 18, 2013, and a cross motion for summary judgment in May 2013. The motions ripened, and on July 11, 2013, Magistrate Judge Stephen C. Williams submitted a Report and Recommendation ("R&R") via 28 U.S.C. § 636, in which he recommended the following:

1. Granting (Doc. 61) the Effingham County Defendants' summary judgment motion;
2. Granting (Doc. 59) the Marion County Defendants' summary judgment motion;

3. Denying as Moot (Doc. 76, Doc. 79, Doc. 80, and Doc. 81) Plaintiff's cross motions pertaining to the Effingham and Marion County Defendants, as well as those Defendants' motions to strike Plaintiff's cross motions;

4. Denying (Doc. 64) Plaintiff's Cross Motion for Summary Judgment as to Defendants Zeigler, Healey and Chance (all of them ISP Defendants);

5. Granting in part and denying in part (Doc. 55) the ISP Defendants' collective summary judgment motion as follows:

   a. Granting summary judgment to Defendants Pansing, Ristvedt, Zerrusen and Kamminga; and

   b. Denying summary judgment as to Defendants Zeigler, Healey and Chance.

In accordance with 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), Judge Williams set a deadline for the parties to file objections to any or all of the proposed dispositive findings in his R&R.

Plaintiff filed three specific objections: (1) that Effingham Sheriff Monnet (who assumed custody of Plaintiff after the ISP) should be responsible for his subordinates' failure to inform Plaintiff of his Article 36 rights, and that the lack of evidence regarding Monnet's duty to inform Plaintiff of those rights precludes summary judgment; (2) that the *Monell* claims against Effingham County should therefore also survive; and (3) that he should have been granted summary judgment on his cross motion against Defendants Zeigler, Chance, and Healey.

ISP defendants Zeigler, Chance and Healey filed a sixteen-page Objection that rehashes five of the same points made in their summary judgment motion: (1) Plaintiff is not entitled to nominal damages; (2) Plaintiff has no evidence of evil motive / intent or reckless / callous indifference; (3) Plaintiff offers no evidence Defendant Zeigler knew Plaintiff was a Nigerian national; (4) Defendants are entitled to qualified immunity; and (5) Plaintiff offers no evidence any Defendant was aware of Vienna Convention obligations.

The undersigned need only make *de novo* determinations of the portions of Judge Williams' R&R to which objections are made. **28 U.S.C. § 636(b)(1)(C);** *Thomas v. Arn*, **474 U.S. 140 (1985);** *Johnson v. Zema Sys. Corp.*, **170 F.3d 734, 741 (7th Cir. 1999);** *Video Views, Inc. v. Studio 21, Ltd.*, **797 F.2d 538 (7th Cir. 1986)**. Accordingly, before proceeding to the substance of the parties' objections, the Court **ADOPTS** in part Judge Williams' R&R thusly, since none of the following recommendations drew an objection:

- The Motion for Summary Judgment filed by Jerry DeVore, the County of Marion, and the Marion County Sheriff's Department (**Doc. 59**) is **GRANTED**. Plaintiff's Cross Motion for Summary Judgment (**Doc. 79**) against those Defendants, as well as the Defendants' Motion (**Doc. 81**) to Strike that Cross Motion, are accordingly **MOOT**. The Clerk is **DIRECTED** to terminate Defendants Jerry DeVore, the Marion County Sheriff's Department, and the County of Marion from the docket.

- The ISP Defendants' Motion for Summary Judgment (**Doc. 55**) is **GRANTED IN PART**. Summary judgment is granted as to Defendants Pansing, Ristvedt, Zerrusen and Kamminga, and the Clerk is **DIRECTED** to terminate those Defendants from the docket.

- The Effingham County Defendants' Motion for Summary Judgment (**Doc. 61**) is **GRANTED IN PART.** Summary judgment is granted to Defendants Rich, Deters, and Fowler, and the Clerk is **DIRECTED** terminate those Defendants from the docket.

With those Defendants terminated, the Court can focus on the record as it pertains to the remaining parties: Plaintiff; ISP Officers Zeigler, Chance and Healey; and Effingham County Sheriff Monnet (along with Effingham County and its Sheriff's Department). The Court undertakes *de novo* review of the dispositive cross motions pertaining to those parties. **28 U.S.C. § 636(b)(1)(C).**

FACTUAL BACKGROUND

Defendant Zeigler, an ISP officer, pulled Plaintiff over for a license plate violation in March 2009. During the stop, Zeigler discovered Plaintiff had a warrant outstanding in a neighboring county, and asked for permission to search the car. Plaintiff refused permission, and a local K-9 unit was called to the scene. The K-9 unit alerted to the presence of drugs, and Zeigler arrested Plaintiff.

4

Plaintiff—a Nigerian national living legally in the United States[1]—does not specifically recall telling Zeigler he was from Nigeria, or that he was a Nigerian citizen, but he does believe he had a conversation with Zeigler about his Nigerian name. Zeigler, though he argues that information would not necessarily give him knowledge of Plaintiff's Nigerian citizenship, does not deny authorship of a next-day field report that lists Nigeria as Plaintiff's place of birth.

Zeigler took Plaintiff to an ISP interrogation room, where Plaintiff was interviewed by Officers Chance and Healey. It is undisputed that, during that interview, Plaintiff identified himself as a Nigerian and told the officers he was not a United States citizen. The ISP has an official, written policy requiring foreign nationals to be notified of their right to seek consular assistance, but no such notification was given.

After Plaintiff's ISP interview, he was transferred to the Effingham County jail, where he informed an intake officer (not a defendant here) of his Nigerian citizenship, but never met Effingham Sheriff Monnet. Plaintiff was subsequently transferred to another local jail, and eventually convicted on federal charges.

## ANALYSIS

1. **Summary Judgment Standard**

Summary judgment is warranted only if the admissible evidence considered as a whole shows no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56). The initial burden is borne by the party seeking summary judgment, which must demonstrate the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

---

[1] Though Plaintiff has never been a U.S. citizen, at the time of his 2009 arrest he had a valid social security number, a green card, and Illinois driver's license.

Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings"). A mere scintilla of evidence supporting the non-movant's position is insufficient to overcome summary judgment; a non-movant will prevail only when it presents definite, competent evidence to rebut the motion. *Estate of Escobedo v. Martin*, 702 F.3d 388, 403 (7th Cir. 2012); *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012). But even a self-serving affidavit filed by a prisoner can be enough to ward off summary judgment. *See Navejar v. Iyiola*, 718 F.3d 692, 697 (7th Cir. 2013). Summary judgment is only appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Carlisle v. Deere & Co.*, 576 F.3d 649, 653 (7th Cir. 2009).

The Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court considers facts in a light most favorable to the non-movant. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

2. **Plaintiff's Objections to R&R — Overruled**

Plaintiff's objections to Judge Williams R&R are threefold: (1) Effingham Sheriff Monnet (who assumed custody of Plaintiff after the ISP) should be responsible for his subordinates' failure to inform Plaintiff of his Article 36 rights, and that the lack of evidence regarding Monnet's duty to inform Plaintiff of those rights precludes summary judgment; therefore (2) the *Monell* claims against Effingham County should therefore also survive; and (3) that he should have been granted summary

6

judgment on his cross motion against Defendants Zeigler, Chance, and Healey. The undersigned takes the objections in turn.

### A. *Summary Judgment for Sheriff Monnet is Warranted*

Because it would have been reasonable for him to rely on the ISP to take responsibility for the consular notification requirement, Judge Williams recommends granting summary judgment for Effingham Sheriff Monnet on qualified immunity grounds. Plaintiff asserts Monnet is not entitled to summary judgment because he "was responsible for making sure his subordinates were aware of and abided by the requirements of the Vienna Convention" (Doc. 95), and because the evidence shows Sheriff Monnet could not (or did not) rely on the earlier-in-the-chain-of-custody ISP officers to have informed Plaintiff of his Article 36 rights.

Several legal propositions defeat Plaintiffs' objection. As to Monnet's "responsibility" for ensuring his subordinates' compliance with the Vienna Convention, it is well-established that a defendant must be personally responsible for the deprivation of a right for a § 1983 claim to succeed. *Backes v. Vill. of Peoria Heights, Ill.*, **662 F.3d 866, 869 (7th Cir. 2011).** While a supervisor may be personally liable if he knows about his subordinates' conduct and facilitates, approves, condones, or turns a blind eye to it, *id.* **(citing** *Chavez v. Ill. State Police*, **251 F.3d 612, 651 (7th Cir. 2001))**, there is no evidence on the record that Monnet knew of Plaintiff's Nigerian citizenship, much less approved of his intake officer's failure to inform Plaintiff of his Vienna Convention rights.

Plaintiff's second objection attacks Judge Williams' qualified immunity holding, in which he concludes it would have been reasonable for Sheriff Monnet to assume the ISP—the entity that arrested and detained Plaintiff—took responsibility for the consular notification requirement. A plaintiff seeking to defeat a qualified immunity defense must establish both the deprivation of a right and that the right in question was "clearly established." *Miller v. Harbaugh*, **698 F.3d 956, 962**

7

**(7th Cir. 2012).** Citing on a 2012 case from another district, Judge Williams concluded Plaintiff's right to consular notification was not "clearly established" to the extent that a municipality holding an ISP prisoner cannot rely on the ISP to have discharged the consular notification requirement. *See Belbachir v. Cnty. of McHenry*, **2012 WL 4595344, at \*5 (N.D. Ill. Sept. 28, 2012),** *rev'd in part on other grounds*, **--- F.3d ----, 2013 WL 4046454 (7th Cir. 2013).** In that case, a local municipality holding a federal prisoner was granted qualified immunity on the same issue where "it would have been reasonable for [the defendant] to conclude that the consular notification responsibility belonged exclusively to the federal authority and that those authorities had carried it out." *Id.*

The undersigned finds the magistrate's reliance on *Belbachir* on point. Holding otherwise would punish the Effingham defendants for failing to follow a rule that, at each stage in the custody process, a detainee's citizenship should be confirmed, as should previous custodian's compliance with Article 36. Such a rule is unworkable and, more importantly for a qualified immunity analysis, is not part of Seventh Circuit precedent. Plaintiff further posits that, because there is no agreement between the ISP and Monnet's department regarding the consular notification requirement, and that Monnet did not provide an affidavit that he actually relied on ISP notification, summary judgment is improper. That logic would expose Monnet to liability for what he did *not* know at the time of Plaintiff's detention, and run afoul of the purpose of qualified immunity: to provide a government official reasonable notice that certain conduct violates a plaintiff's rights before the plaintiff can subject him to liability. *Narducci v. Moore*, **572 F.3d 313, 318 (7th Cir. 2009).** The Court **GRANTS** in part (**Doc. 61**) the Effingham County Defendants' summary judgment motion as it pertains to Sheriff Monnet.

Plaintiff's argument that Monnet failed to ensure his subordinates' compliance with Vienna Convention requirements is really a *Monell* argument, and is therefore controlled by his next

8

objection: that because Monnet should have been personally liable for a Vienna Convention violation, the *Monell* claim against Effingham County and its Sheriff's Department should survive.

### B. Summary Judgment on Monell Claims re: Effingham Cnty. & its Sheriff's Dep't.

Where a custom, policy or practice effectively causes or condones alleged violations of rights, a municipality can still be subject to § 1983 liability without violations by any of its officers. *Monell v. New York Dep't of Soc. Servs.*, **436 U.S. 658 (1978)**; *Matthews v. City of E. St. Louis*, **675 F.3d 703, 708–09 (7th Cir. 2012)**. A municipality can be held liable under *Monell*, even if its officers are not, unless such a finding would create an inconsistent verdict. *Thomas v. Cook Cnty. Sheriff's Dep't*, **604 F.3d 293, 305 (7th Cir. 2009).** Inadequate police training can only serve as a basis for § 1983 liability where it amounts to deliberate indifference to the rights of citizens encountered by the department's officers. *Matthews*, **675 F.3d at 709.**

Here, as discussed above, both Sheriff Monnet and his officers were granted summary judgment on qualified immunity grounds, because no precedent shows law enforcement officials in custody of a foreign national have a continuing duty to ensure that national is apprised of his Article 36 rights. *See Belbachir v. Cnty. of McHenry*, **2012 WL 4595344, at *5 (N.D. Ill. Sept. 28, 2012), rev'd on other grounds, --- F.3d ----, 2013 WL 4046454 (7th Cir. 2013).** As Judge Williams concluded, it would be inconsistent to hold a municipality liable for insufficiently training its officers regarding the rights of its detainees when the individual rights asserted by a plaintiff are not clearly established. That hardly amounts to deliberate indifference toward citizens' (or in this case, non-citizens') rights. Further, Plaintiff does not attack that conclusion—he only asserts that, because Sheriff Monnet should not be granted summary judgment, neither should Effingham County or the Sheriff's Department.

He has waived any argument under *Thomas v. Cook Cnty. Sheriff's Dep't*, and because Monnet has been granted summary judgment, Plaintiff's argument falters. Insofar as it pertains to

Effingham County and the Effingham County Sheriff's Department, Defendants' Motion for Summary Judgment (**Doc. 61**) is **GRANTED in PART** (a ruling which means Defendants have prevailed on all parts of that motion).

### C. Fact Questions re: Defendants' State of Mind Preclude Summary Judgment

Plaintiff's final objection—that Chance and Healey's knowledge of his Nigerian citizenship puts to rest the issue of their liability—fares no better. Liability under § 1983 requires that a defendant "intentionally or recklessly" deprives a plaintiff of a right. *Holloway v. Delaware Cnty. Sheriff*, **700 F.3d 1063, 1069 (7th Cir. 2012).** While it is undisputed that Chance and Healey knew Plaintiff was a Nigerian national, for Plaintiff to prevail he must also show their mental state. And a defendant's reason for acting (or failing to act) is a question of fact. *See Arnett v. Webster*, **658 F.3d 742, 754 (7th Cir. 2011).** *Accord Washington v. Hively*, **695 F.3d 641, 643–44 (7th Cir. 2012) ("[S]ubjective intent (a redundancy: intent is a mental state, hence subjective), unless admitted, has to be inferred rather than observed; judges and jurors are not mind readers.").** Whether Chance and Healey acted with the requisite mental state is a matter properly left to the jury.

Plaintiff's Motion for Summary Judgment against the ISP Defendants (**Doc. 64)** is accordingly **DENIED**.

3. **Defendants' Objections to R&R — Overruled**

Magistrate Judge Williams recommends denying summary judgment to Defendants Zeigler, Chance and Healy because questions of fact remain as to whether Zeigler knew Plaintiff was a Nigerian national, and questions of fact remain as to whether any Defendant possessed the requisite mental state for § 1983 liability. Before reaching the factual issues, though, Judge Williams made several legal determinations, two of which—that Plaintiff is not entitled to nominal damages, and that Defendants are entitled to qualified immunity—have drawn objections. The Court deals with

those objections first, and then (if necessary) will turn to Defendants' objections regarding the sufficiency of the evidence.

### A. Nominal Damages Available

Defendants invoke several cases for the proposition that nonconstitutional injuries—like the violation of rights under an international treaty—do not trigger nominal damages under § 1983. Generally, those cases contain language that nominal damages are "only appropriate to vindicate constitutional rights whose deprivation has not cause actual, provable injury." **Stachniak v. Hayes, 989 F.2d 914, 923 (7th Cir. 1993).** The cases—several of which are non-precedential—draw from **Carey v. Piphus, 435 U.S. 247, 266 (1978)**, where the Supreme Court recognized that the violation of a plaintiff's right to procedural due process

Defendants misread *Piphus*, which focuses on the absolute nature of a right whose violation cannot be said to have caused any other actual injury. In *Piphus* the right happened to be constitutional, but the Supreme Court explained that nominal damages are tied to a common-law history that permits the assertion of important rights where no other damages exist:

> Common-law courts traditionally have vindicated deprivations of certain "absolute" rights that are not shown to have caused actual injury though the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of … punitive damages, to deter or punish malicious deprivations of rights.

**435 U.S. at 266.** In other words, Defendants focus too much on the "constitutional" language that has evolved post-*Piphus*, but not enough on its core holding: that the violation of an "absolute" right is in itself actionable, and that nominal damages sometimes serve as the only way to vindicate such a right.

The better reading, and the one advanced in Judge Williams' R&R, is that a violation of Article 36 rights is precisely the type of right that, absent nominal damages, cannot be vindicated.

11

The Seventh Circuit has recently held that "physical injury is not the only type of injury actionable in a prisoner's *civil rights* suit." **Thomas v. Ill., 697 F.3d 612, 614 (7th Cir. 2012) (citing Washington v. Hively, 695 F.3d 641 (7th Cir. 2012) (emphasis added)). See also Cotts v. Osafo, 692 F.3d 564, 569 (7th Cir. 2012) ("[T]he liability determination comes first, and only if a jury finds liability should it consider damages"; Calhoun v. DeTella, 319 F.3d 936, 941 (7th Cir. 2003).** The *Thomas* court did not split hairs as to what types of § 1983 cases (whether based on the Constitution, federal law, or treaty) enable recovery of nominal damages. And the Seventh Circuit—the first circuit to squarely confront the question—has firmly announced that § 1983 is the proper vehicle for pursuing relief under Article 36 of the Vienna Convention. **Jogi v. Voges, 480 F.3d 822, 835–36 (7th Cir. 2007).** It is difficult to imagine a situation where a foreign national earns prospective or compensatory relief for failing to be notified of his Vienna Convention rights. And given the Seventh Circuit's approval of § 1983 actions for Article 36 violations, it would be an absurd result to allow foreign nationals like Plaintiff to sue under § 1983, then to disallow nominal damages, the only type of damages that would vindicate their Article 36 rights.

Defendants' objection is overruled, and their motion for summary judgment (**Doc. 55**) is **DENIED in part.**

### B. *No Qualified Immunity*

Qualified immunity protects public servants from liability from reasonable mistakes made while performing their duties. **Findlay v. Lendermon, 722 F.3d 895, 899 (7th Cir. 2013).** Defeating qualified immunity requires conduct violating a plaintiff's constitutional or statutory rights that is clearly established at the time of the violation, such that a reasonable official would understand that what he is doing violates that right. *Id.*

Citing *Medellin v. Texas*, 552 U.S. 491, Defendants assert that Judge Williams' failure to recommend summary judgment on qualified immunity grounds was in error. In *Medellin*—a habeas

case brought by a Texas death penalty defendant—the Court noted that the International Court of Justice ("ICJ") has held that the "without delay" requirement of Article 36 is satisfied where notice is provided within three working days. **552 U.S. at 502 n.1.** But *Medellin* was a case about whether an ICJ decision and/or a presidential memorandum constituted pre-emptive, enforceable federal law that limited the filing of successive habeas petitions. *See id.*

This § 1983 case—where officials' failure to notify Plaintiff is not in dispute—turns on whether Defendants intentionally or recklessly deprived Plaintiff of his consular notification right. *See Holloway v. Delaware Cnty. Sheriff*, **700 F.3d 1063, 1069 (7th Cir. 2012).** If they did—and as discussed below, that issue is properly left to a finder of fact—the only question for the qualified immunity analysis is whether the right was established. And in *Jogi v. Voges*, a 2007 case that predates Plaintiff's arrest, the Seventh Circuit was clear: Article 36 of the Vienna Convention grants a private, enforceable right to a foreign national (that he be informed of his Article 36 right to consular assistance). **480 F.3d 822, 835–36.** At best, the ISP Defendants' argument against Plaintiff having well-established rights is misguided. Given the ISP's own policy that foreign nationals be notified of their right to seek consular assistance, the argument borders on the disingenuous.

Insofar as it is based on a qualified immunity argument, Defendants' objection is overruled, and their Motion for Summary Judgment (Doc. 55) is **DENIED in part**.

### C. Questions of Fact Preclude Summary Judgment

Defendants' final three objections revolve around the sufficiency of the evidence as it relates to the requisite intent of all three Defendants for a punitive damages award, Zeigler's knowledge that Plaintiff was a Nigerian national, and the three Defendants' knowledge (or lack thereof) regarding the duty placed on them by the Vienna Convention. Broadly, Defendants argue that Plaintiff has not come forward with evidence, as is his burden, to avoid summary judgment.

While it is possible the evidence on record could sustain a verdict that Zeigler had no idea Plaintiff was a Nigerian national, that none of the Defendants knew of the state's obligations under the Vienna Convention, and that Defendants acted without the callous indifference necessary to support a punitive damages award, a jury could infer otherwise. Zeigler denies knowing Plaintiff was a Nigerian citizen, but the evidence—including a police report from the next day possibly authored by Zeigler, as well as evidence that Zeigler knew Plaintiff was born in Nigeria and had a Nigerian name—could cut against him. As to the "evil motive or intent" necessary to support a punitive award, this case is distinguishable from *Kyle v. Patterson*, the sole case relied upon by Defendants. There, as the magistrate judge pointed out, any constitutional violation was in part caused by a third party's delay. *See* **196 F.3d 695, 698.** Here the entire delay in Plaintiff's failure to be notified of his consular assistance rights *could* have been the result of Defendant's reckless decision to ignore both the Vienna Convention and a parallel ISP policy—neither of which any ISP Defendant has sworn not to know about. *See Costello v. Grundon*, **651 F.3d 614, 635 (7th Cir. 2011) ("Only *after* the movant has articulated with references to the record and to the law specific reasons why it believes there is no genuine issue of material fact must the nonmovant present evidence sufficient to demonstrate an issue for trial.").** *See also Modrowski v. Pigatto*, **712 F.3d 1166, 1169–70 (7th Cir. 2013) (describing the "trickier" path to summary judgment: making a showing that the party with the trial burden cannot produce admissible evidence to carry its burden as to that fact).** And that ISP policy—as evidence of Defendants' mental state, not as an independent font for legal recourse—also supports an inference that Defendants knew about their Vienna Convention obligations.

The evidence, even when construed in Plaintiff's favor, is far from overwhelming. But it does not preclude a reasonable jury from finding for Plaintiff. Summary judgment is unwarranted, and Defendants' motion (**Doc. 55**) is **DENIED in PART.**

**OTHER MOTIONS**

The above rulings dispose of Plaintiff's claims, except as they pertain to Zeigler, Chance, and Healey, all three of whom are ISP Defendants. Accordingly, Plaintiff's Appeal of Magistrate Judge Decision (**Doc. 90**), in which he challenges Judge Williams' ruling on a discovery matter pertaining only to the Effingham and Marion County Defendants, is **MOOT**.

**CONCLUSION**

All parties' objections are **OVERRULED**, and the Report & Recommendation (**Doc. 87**) filed by Magistrate Judge Williams on July 11, 2013 is **ADOPTED.**

Plaintiff's Motion for Summary Judgment against the ISP Defendants (**Doc. 64**) is **DENIED**.

The Motion for Summary Judgment filed by Jerry DeVore, the County of Marion, and the Marion County Sheriff's Department (**Doc. 59**) is **GRANTED**. Plaintiff's Cross Motion for Summary Judgment (**Doc. 79**) against those Defendants, as well as the Defendants' Motion (**Doc. 81**) to Strike that Cross Motion, are accordingly **MOOT**. The Clerk is **DIRECTED** to terminate Defendants Jerry DeVore, the Marion County Sheriff's Department, and the County of Marion from the docket.

The ISP Defendants' Motion for Summary Judgment (**Doc. 55**) is **GRANTED IN PART and DENIED IN PART**. Summary judgment is granted as to Defendants Pansing, Ristvedt, Zerrusen and Kamminga, and the Clerk is **DIRECTED** to terminate those Defendants from the docket. Summary judgment is denied as to Defendants Zeigler, Chance, and Hardy.

The Effingham County Defendants' Motion for Summary Judgment (**Doc. 61**) is **GRANTED.** Summary judgment is granted to Defendants Rich, Deters, Fowler, Monnet, the Effingham County Sheriff's Department, and the County of Effingham. Plaintiff's Cross Motion for Summary Judgment (**Doc. 76**) against those Defendants, as well as Defendants' Motion (**Doc.**

**80**) to strike that motion, are accordingly **MOOT**. The Clerk is **DIRECTED** terminate those Defendants from the docket.

Plaintiff's Appeal of Magistrate Judge Decision (**Doc. 90**), in which he challenges Judge Williams' ruling on a discovery matter pertaining only to the Effingham and Marion County Defendants, is **MOOT**.

Three motions remain pending: Plaintiff's Motion for Sanctions and Motion to Compel (Doc. 84), his Motion for Disclosure (Doc. 85), and the ISP Defendants' Motion to Strike Plaintiff's Motion for Disclosure (Doc. 92).

A final pretrial conference remains set for 1:30 p.m. on Wednesday, September 25 before Magistrate Judge Williams. The jury trial remains set for 9:00 a.m. on Monday, October 7, 2013.

**IT IS SO ORDERED.**

**DATE: September 19, 2013**                    s/ *Michael J. Reagan*
                                                **MICHAEL J. REAGAN**
                                                United States District Judge